IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 06-cv-01960-WYD-BNB

DC AVIATION, LLC,

    Plaintiff,

v.

AVBASE FLIGHT SERVICES, LLC;
JET PARTNERS, LLC;
JOHN DePALMA;
AFS GROUP LLC, d/b/a Avbase, Avbase Aviation, LLC, Avbase Flight Services, LLC, Jet Partners, LLC, and Private Jet Management, LLC;
PRIVATE JET MANAGEMENT, LLC; and
DOES 1 - 25,

    Defendants.

## ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This matter is before the Court on Defendants John DePalma, AFS Group, LLC, and Private Jet Management, LLC's (collectively the "Moving Defendants") Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to F.R.Civ.P. 12(b)(2) (Dkt. # 16), filed on November 30, 2006. Plaintiff filed its opposition to the motion on July 16, 2007 (Dkt. # 64) after the parties engaged in jurisdictional discovery. The Moving Defendants replied on July 31, 2007 (Dkt. # 65). Also pending is Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss (Dkt. # 67), filed on August 13, 2007. Having reviewed the parties' submissions and the applicable law, the Court enters the following order.

I.  **BACKGROUND**

The following alleged facts are taken from plaintiff's complaint (Dkt. # 1).  Plaintiff is a Colorado limited liability company whose sole member is a resident of Colorado.  Compl. ¶ 1.  The only individual defendant in this case, John DePalma, is a resident of Ohio, and the four corporate defendants are all Ohio limited liability companies whose members are residents of Ohio.  *Id.* ¶¶ 2–6.  Plaintiff alleges Defendant DePalma has operated a private aircraft brokerage and charter business since 1993 and has organized various entities through which he operates his business.  *Id.* ¶ 11.  These entities include Avbase Aviation, LLC, Avbase Aviation, Ltd., AFS Group, LLC, Avbase Flight Services, LLC, UltraJet, LLC, and Jet Partners, LLC.  *Id.* ¶¶ 12–13, 17, 21.  DePalma has identified himself as chairman, CEO, president, manager, and/or founder of these entities.  *Id.* ¶ 23.  The entities were operated out of the same office, and DePalma has advertised for these entities using the same logo, phone number, and e-mail address.  *Id.*  In addition, all flight charters have been operated under the same FAA Air Carrier Certificate Number.  *Id.*

In or around March 2005, Defendant DePalma contacted plaintiff in Colorado, requesting to lease plaintiff's Gulfstream G-200 aircraft (the "Jet") for use in his aircraft charter business, which he represented as "Avbase."  *Id.* ¶ 37.  On April 4, 2005, DePalma called Brian Fleischmann, plaintiff's Vice President, at plaintiff's Colorado offices and introduced Fleischmann to other Avbase employees.  *Id.*  The same day, DePalma faxed a letter to Fleischmann discussing the safety record and procedures of Avbase, signed by DePalma as "Chairman and CEO" of Avbase.  *Id.*  DePalma and Fred Kirby, introduced to Fleischmann as Avbase's Director of Operations, traveled to

Colorado and met with Fleischmann at plaintiff's Colorado office on May 5, 2005 to discuss DePalma's request to lease the Jet. *Id.*

During that meeting, DePalma represented to Fleischmann that: he intended to use the Jet for his charter operations for five years; the charter business was operating under the name Avbase Flight Services, LLC ("Avbase Flight Services"); Avbase Flight Services held an Air Carrier Certificate as required for conducting business as an aircraft charter company; and Avbase Flight Services and Jet Partners, LLC ("Jet Partners")—Avbase Flight Services's parent company—had the financial resources to make lease payments during the term of the proposed lease. *Id.* ¶¶ 38–41. On May 27, 2005, plaintiff executed a five-year lease agreement (the "Lease") with Avbase Flight Services as lessee and Jet Partners as guarantor. *Id.* ¶¶ 44, 46. DePalma signed the Lease and Guaranty on behalf of both Avbase Flight Services and Jet Partners in his capacity as chairman. *Id.* ¶¶ 44, 46 & Ex. A thereto at 31–32. The Lease obligated Avbase Flight Services to, among other things, deliver to plaintiff at its Colorado office monthly reports and rent payments for the use of the Jet. *Id.* ¶ 45.

Within the first month of executing the Lease, Avbase Flight Services and Jet Partners failed to deliver timely reports and rent payments in accordance with the Lease. *Id.* ¶ 49. Plaintiff alleges that between June and December 2005, DePalma and Avbase Flight Services continued to enjoy the use of and revenue generated by the Jet, but were behind on their Lease obligations by approximately $250,000. *Id.* ¶¶ 50–51. On December 21, 2005, after plaintiff sent a demand letter for payment, plaintiff entered into a Lockbox Agreement with Avbase Flight Services (again as lessee) and Jet Partners (again as guarantor) to ensure that all revenue from the use of the Jet would

3

be applied to pay amounts past due under the Lease. *Id.* ¶¶ 52–53. DePalma again signed on behalf of both Avbase Flight Services and Jet Partners, this time in his capacity as manager. Ex. B to Compl. at 8, A-1. Under the Lockbox Agreement, the Lessee Parties—defined as Avbase Flight Services, Jet Partners, and DePalma—agreed to "submit to the nonexclusive jurisdiction of the state and federal courts sitting in Denver, Colorado . . . in any action or proceeding arising out of or relating to any Lease Document [defined as the Lease, the Lockbox Agreement, and one other document], or for recognition or enforcement of any judgment." *Id.* at 1, 6 (original in all caps).

Plaintiff alleges that in or around January 2006, DePalma transferred the assets of various entities, including Avbase Flight Services and Jet Partners, to a newly formed company, Defendant Private Jet Management, LLC ("PJM"), leaving Avbase Flight Services and Jet Partners defunct and unable to perform their contractual obligations to plaintiff. *Id.* ¶ 55. DePalma then attempted to negotiate a new agreement for lease of the Jet to PJM. *Id.* ¶ 57. On February 15, 2006, plaintiff executed a letter agreement with PJM and Avbase Flight Services whereby PJM agreed to assume Avbase Flight Services's obligations under the Lease, not including past due payments, from February 15, 2006 through February 28, 2006. *Id.* ¶ 58 & Ex. C thereto. The agreement provided that its termination would not affect Avbase Flight Services's obligations under the Lease. Ex. C. DePalma signed the agreement on behalf of Avbase Flight Services in his capacity as president; another individual signed the agreement on PJM's behalf. *Id.*

In March 2006, plaintiff retook possession of the Jet, and on April 26, 2006, plaintiff made a written demand to DePalma, Avbase Flight Services, Jet Partners, and

4

PJM for immediate payment of all amounts due under the various agreements between the parties. *Id.* ¶ 60. To date, plaintiff alleges, payment has not been made. *Id.* ¶ 61.

Plaintiff filed this lawsuit on October 2, 2006, asserting the following causes of action: (1) breach of contract against Avbase Flight Services and Jet Partners; (2) fraud and negligent misrepresentation against DePalma, Avbase Flight Services, and Jet Partners; (3) unjust enrichment against DePalma, Avbase Flight Services, and Jet Partners; (4) breach of fiduciary duty against DePalma; (5) aiding and abetting a breach of fiduciary duty against Avbase Flight Services, Jet Partners, PJM, and AFS Group, LLC ("AFS Group"); (6) fraudulent transfer against DePalma, Avbase Flight Services, Jet Partners, and PJM; (7) tortious interference with contract against DePalma and PJM; and (8) civil conspiracy against all defendants. Plaintiff also asserts the "formal corporate separateness" between DePalma and the corporate defendants, and between PJM and the other corporate defendants, should be disregarded under the equitable theories of alter ego, reverse veil piercing, and de facto merger.

## II.  STANDARD OF REVIEW

Once a court's personal jurisdiction over a defendant has been challenged, "the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). When a district court rules on a F.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction based on affidavits and other written materials, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

5

In deciding such a motion to dismiss, "[t]he allegations in the complaint must be taken as true to the extent that they are uncontroverted by the defendant's affidavits." *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990). However, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). When the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*; *see also Kennedy*, 919 F.2d at 128. "[T]o put the contested facts in issue, however, affidavits submitted in support of or in opposition to the motion to dismiss . . . must comply with the requirements of Rule 56(e)," *i.e.*, they "must contain 'personal knowledge, admissible facts, and affirmative showing of competency.'" *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1115 (D. Colo. 1999) (quoting *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 175 n.6 (10th Cir. 1992)). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### III.  ANALYSIS OF PERSONAL JURISDICTION

#### A.  Applicable Law

In a diversity suit, personal jurisdiction over nonresident defendants, such as the Moving Defendants, is determined by the law of the forum state. *Wenz*, 55 F.3d at 1506 (citing F.R.Civ.P. 4(e)). Colorado's long-arm statute, C.R.S. § 13-1-124(1), "extend[s]

6

the personal jurisdiction of Colorado courts to their maximum limits permissible under the United States and Colorado Constitutions." *Scheuer v. District Court*, 684 P.2d 249, 250 (Colo. 1984). Nevertheless, Colorado courts employ a two-pronged analysis in making jurisdictional determinations. *Wenz*, 55 F.3d at 1506–07. Courts determine first whether the exercise of jurisdiction is sanctioned by Colorado's long-arm statute, and second, whether such exercise comports with due process under the United States Constitution. *Id.* at 1507.

As is relevant here, Colorado's long-arm statute sanctions Colorado courts to exercise jurisdiction over out-of-state defendants who commit "a tortious act within this state." C.R.S. § 13-1-124(1)(b). This provision "implies the total act embodying both the cause and its effect." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992) (citing *D & D Fuller CATV Const., Inc. v. Pace*, 780 P.2d 520, 524 (Colo. 1989)). As such, Colorado's long-arm statute reaches both (1) tortious conduct occurring in Colorado, and (2) tortious conduct occurring elsewhere that causes injury in Colorado. *See Wenz*, 55 F.3d at 1507.

In addition to satisfying Colorado's long-arm statute, plaintiff must also fulfill the constitutional requirement found in the Due Process Clause of the Fourteenth Amendment to successfully establish personal jurisdiction over the Moving Defendants. *See Wenz*, 55 F.3d at 1507. Personal jurisdiction under the Due Process Clause may be either specific or general. *See, e.g.*, *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1189 (D. Colo. 1999). General jurisdiction is found when a defendant has "continuous and systematic activity in the forum state." *Id.* Specific jurisdiction, on the other hand, "is predicated upon a defendant's minimum contacts with the forum which give rise

7

to the cause of action." *Id*. at 1190. Plaintiff impliedly contends the Court has specific jurisdiction over the Moving Defendants.

Under specific jurisdiction, the "touchstone inquiry is whether the defendant has purposefully directed its activities toward the forum jurisdiction and whether the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Wise*, 89 F. Supp. 2d at 1190 (internal quotation marks and brackets omitted). Moreover, even if a plaintiff shows that a defendant has purposefully availed itself of the laws and protections of the forum state, the court must still "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

### B.  Defendant DePalma

Plaintiff alleges DePalma committed the tortious acts of fraud and negligent misrepresentation in Colorado and is thus subject to personal jurisdiction here. Specifically, plaintiff alleges: DePalma contacted plaintiff in Colorado via phone and fax to discuss leasing the Jet; DePalma traveled to Colorado to meet with plaintiff in person; and DePalma knowingly made several false representations at that meeting, which plaintiff relied upon to its detriment in executing the Lease. Defendants do not dispute that such allegations, if true, would constitute the commission of a tort in Colorado under the state's long-arm statute and would confer jurisdiction on Colorado courts consistent with due process requirements. Rather, defendants argue that any statements by DePalma during these conversations and meetings were made on behalf

8

of his principals—Avbase Flight Services and Jet Partners—and thus cannot be imputed to him individually for purposes of personal jurisdiction. Def.'s Mot. at 12.

Defendants rely on well-established Tenth Circuit law that "[w]here the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction." *Ten Mile Indus. Park*, 810 F.2d at 1527 (citations omitted). Thus, unless it is appropriate to pierce the corporate veil to permit jurisdiction over individual officers or directors of a company, jurisdiction over those representatives "must be based on their individual contacts with the forum state" and "may not be predicated on jurisdiction over the corporation itself." *Id.*

Plaintiff alleges DePalma made the representations at the meeting in Colorado "on behalf of himself and as the agent for and on behalf of Defendant[s] Avbase Flight Services and . . . Jet Partners." Compl. ¶¶ 73, 87. In addition, Fleischmann, who was present at the meeting, testified by affidavit that DePalma made the allegedly false representations "on his own behalf and on behalf of his companies." Fleischmann Aff. ¶¶ 10, 12, 13, Ex. 1 to Pl.'s Resp. DePalma, on the other hand, testified that his participation at the meeting was solely in his corporate capacity as an agent for Avbase. DePalma Aff. ¶ 10, Ex. A to Def.'s Reply. Defendants also assert that plaintiff's allegations are conclusory and must be disregarded. Fleischmann's testimony, however, is based on personal knowledge of what transpired and what was said at the meeting. While such testimony is controverted by DePalma's affidavit and may or may not ultimately be true, the court resolves such factual disputes in favor of plaintiff. *Kennedy*, 919 F.2d at 128.

9

Moreover, a similar argument was rejected by the district court in *Broadview Financial, Inc. v. Entech Management Services Corp.*, in which an officer of a corporate defendant who allegedly made misrepresentations over the phone to a Colorado plaintiff contended the plaintiff failed to allege he had acted in his individual capacity in making those representations. 859 F. Supp. 444, 447 (D. Colo. 1994). The court in *Broadview* relied on the Supreme Court's statement that a defendant's status as an employee acting in his official capacity neither subjects him to nor insulates him from jurisdiction based on his employer's contacts with the forum state; rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* at 449 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984), and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)). Like the allegations in *Broadview*, it is DePalma's tortious actions upon which plaintiff asserts its misrepresentation claims against him. *Id.*; *see also Wilbourn v. Mostek Corp.*, 537 F. Supp. 302, 305 (D. Colo. 1982) (holding that a corporate employee or agent is only subject to a forum state's long-arm jurisdiction in those cases where he is also personally liable and that the plaintiff's allegations of fraud against a corporate agent were sufficient to establish personal jurisdiction over him in Colorado), *disagreed with on other grounds*, *MedSafe Northwest, Inc. v. Medvial, Inc.*, 1 Fed. Appx. 795, 801 (10th Cir. 2001).[1]

Defendants also assert the fraud allegations against DePalma are insufficient to establish personal jurisdiction because DePalma testified he believed the statements

---

[1] Defendants assert that *Wilbourn* was overturned by the Tenth Circuit's holding in *Ten Mile Industrial Park* regarding jurisdiction over corporate agents. To the contrary, the court in *Wilbourn* recognized the same legal principles discussed in *Ten Mile Industrial Park*. *Wilbourn*, 537 F. Supp. at 304.

made at the Colorado meeting to be true at the time, DePalma Aff. ¶ 11, and only plaintiff's unsupported complaint allegations contradict that testimony. The Court finds, however, that there is a fact issue with respect to the knowledge element of plaintiff's fraud claims, which is resolved in favor of plaintiff for personal jurisdiction purposes. *See* Exs. 8 & 9 to Pl.'s Resp. (reflecting unpaid debts of Avbase Flight Services in April and November 2005). Thus, plaintiff's fraud allegations against DePalma are sufficient to confer personal jurisdiction over him in Colorado, and the Court need not address plaintiff's alternative argument that jurisdiction over DePalma may be predicated on the Court's jurisdiction over Avbase Flight Services and Jet Partners under an alter ego theory.

The Court also notes that DePalma appears to have indirectly recognized Colorado's jurisdiction over him with respect to claims relating to the Lease and Lockbox Agreement. As noted above, under the Lockbox Agreement the "Lessee Parties"—defined as Avbase Flight Services, Jet Partners, *and DePalma*—agreed to "submit to the nonexclusive jurisdiction of the state and federal courts sitting in Denver, Colorado . . . in any action or proceeding arising out of or relating to any Lease Document [which included the Lease and Lockbox Agreement], or for recognition or enforcement of any judgment." Ex. B to Compl. at 1, 6 (original in all caps). DePalma was not actually a party to the Lockbox Agreement, but he did sign the Agreement on behalf of Avbase Flight Services and Jet Partners. This language, along with DePalma's participation in executing the Agreement, indicates DePalma must have reasonably anticipated being haled into court in Colorado in an action relating to the

11

Lease, thereby diminishing any due process concerns. Thus, the Court finds that personal jurisdiction over DePalma is proper.

## C. Defendant PJM

PJM is the company to which Avbase Flight Services and Jet Partners' assets were allegedly transferred in January 2006. Compl. ¶ 55. Plaintiff first asserts that PJM engaged in the "transaction of any business" within Colorado and is thereby subject to jurisdiction here under Colorado's long-arm statute. C.R.S. § 13-1-124(1)(a). Specifically, plaintiff alleges PJM, through DePalma, attempted to negotiate a new lease of the Jet with plaintiff and executed the February 15, 2006 letter agreement in which PJM agreed to assume Avbase Flight Services's obligations under the Lease, not including past due payments, from February 15, 2006 through February 28, 2006.

The long-arm statute provides that a person submits to the jurisdiction of Colorado courts "concerning any cause of action arising from . . . [t]he transaction of any business within this state[.]" C.R.S. § 13-1-124(1)(a). Assuming plaintiffs have sufficiently asserted through the above allegations that PJM transacted business within Colorado, there are no allegations that the causes of action against PJM arise from that transaction. The substantive claims for relief asserted against PJM—fraudulent transfer, aiding and abetting a breach of fiduciary duty, and tortious interference—all relate to PJM's alleged participation in the transfer of Avbase Flight Services's and Jet Partners's assets, not to the letter agreement or the negotiation thereof. Thus, plaintiff's allegations are insufficient to confer jurisdiction over PJM in Colorado under this provision of the long-arm statute.

Plaintiff also asserts that, because Avbase Flight Services and Jet Partners consented to jurisdiction in Colorado by entering into the Lockbox Agreement, PJM, "as the de facto successor to Avbase Flight Services and Jet Partners," also consented to personal jurisdiction in Colorado. Pl.'s Resp. at 17. Under Colorado law, "a corporation which acquires the assets of another corporation [generally] does not become liable for the debts of the selling corporation." *Alcan Aluminum Corp., Metal Goods Div. v. Elec. Metal Prods., Inc.*, 837 P.2d 282, 283 (Colo. App. 1992). However, as is relevant here, the purchasing entity can become liable for the selling entity's obligations if the purchaser is a "mere continuation" of the seller or if the transfer is made for the fraudulent purpose of escaping liability for such obligations. *Id.* Plaintiff argues both of these exceptions apply. The Court holds that the second "fraudulent purpose" exception applies and therefore does not address the applicability of the first exception. Specifically, the Court finds that plaintiff's allegations regarding the fraudulent transfer of Avbase Flight Services's and Jet Partners's assets to PJM are sufficient to establish a reasonable inference that PJM became liable for the obligations of the "selling" corporations.

In arguing otherwise, defendants first contend that "PJM did not acquire Avbase [Flight Services]'s assets," which precludes the imposition of successor liability. Def.'s Reply at 25; DePalma Aff. ¶ 19. However, defendants do not dispute that PJM acquired Jet Partners's assets, and Jet Partners was a party to the Lockbox Agreement. Thus, the sale of Jet Partners's assets to PJM is sufficient to impose successor liability if that transfer was made for the purpose of evading liability. Defendants also rely on DePalma's testimony that "the sale of Jet Partner's [sic] assets to [PJM] was entirely

13

legitimate and supported by sufficient consideration. Specifically, to acquire Jet Partner's [sic] assets that were subject to a primary security interest from Systran Financial Services, Systran had to first approve the sale and would not release its interest in the assets until it had been fully paid. Systran Financial was not paid and the assets were not released to [PJM] until October of 2006." DePalma Aff. ¶ 18. Even assuming this statement is admissible, it is not entirely clear and is largely conclusory. Thus, plaintiff's allegations that the asset transfer left Jet Partners unable to perform its contractual obligations are sufficient to establish a reasonable inference that PJM is liable for Jet Partners's obligations under the Lockbox Agreement, which includes the consent to jurisdiction in Colorado.

### D. Defendant AFS Group

Whether jurisdiction in Colorado over AFS Group is appropriate depends, as it did with DePalma, on whether plaintiff has sufficiently alleged that AFS Group committed "a tortious act within this state." C.R.S. § 13-1-124(1)(b). Unlike the allegations against DePalma, however, there are no allegations that AFS Group was ever present in Colorado or even had any contact with plaintiff in Colorado. Rather, plaintiff claims AFS Group engaged in tortious conduct that caused direct injury to plaintiff in Colorado. Specifically, plaintiff alleges: (1) AFS Group and the other corporate defendants "knowingly participated in, aided and abetted in DePalma's breach of fiduciary duty," which caused plaintiff "substantial damages in Colorado"; and (2) AFS Group and the other defendants "conspired together in Colorado and elsewhere to defraud plaintiff from receiving the benefit of its agreement" and "to fraudulently transfer

substantially all of the assets of Avbase Flight Services and Jet Partners to PJM," which "cause[d] damages to plaintiff in Colorado." Compl. ¶¶ 114–15, 128–30.

The parties dispute whether the allegation that plaintiff suffered an injury in Colorado, in and of itself, satisfies the long-arm statute and due process requirements. Regardless of whether an alleged injury in Colorado is sufficient to satisfy due process, however, the Court finds there are no "well-pled" allegations in plaintiff's complaint to support a claim that AFS Group committed tortious conduct that caused injury in Colorado. What is missing from plaintiff's complaint with respect to AFS Group are any *factual* allegations that relate to the claims for relief asserted against it. Indeed, the following are the very few essential facts alleged involving AFS Group: (1) AFS Group is an Ohio limited liability company whose members are residents of Ohio, Compl. ¶ 5; (2) DePalma created and established AFS Group and several other entities in 2001 "through which he would continue to carry on his aircraft charter business," *id.* ¶ 17; (3) DePalma's businesses operated under an FAA Part 135 Air Carrier Certificate (No. V9BA99H) issued in the name of "AFS Group, LLC d/b/a Avbase Aviation, LLC, and UltraJet, LLC," *id.* ¶¶ 19, 22; and (4) DePalma filed UCC-1 Financing Statements with the Ohio Secretary of State in December 2005 asserting he holds a lien on essentially all assets of AFS Group and several other entities. *Id.* ¶ 27.

It is unclear how the mere fact that AFS Group was established by DePalma, or that the Air Carrier Certificate under which the various companies' charter flights operated was in AFS Group's name, supports plaintiff's claims for relief against AFS Group for aiding and abetting a breach of fiduciary duty or civil conspiracy. Again, there are no fact-based allegations of AFS Group's involvement in the alleged fraudulent

15

transfer or DePalma's alleged breach of fiduciary duty. While the Court must accept plaintiff's well-pled allegations as true, it need not accept conclusory allegations that AFS Group committed tortious behavior that in turn caused injury in Colorado. *Ten Mile Indus. Park*, 810 F.2d at 1524. Accordingly, the Court holds plaintiff has failed to establish that Defendant AFS Group, LLC is subject to personal jurisdiction in Colorado under this state's long-arm statute, and the motion to dismiss is granted with respect to that defendant.

## IV. CONCLUSION

For the foregoing reasons, the Moving Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to F.R.Civ.P. 12(b)(2) (Dkt. # 16) is GRANTED IN PART and DENIED IN PART. The motion is denied with respect to Defendants John DePalma and Private Jet Management, LLC. The motion is granted with respect to Defendant AFS Group, LLC, and the claims against that defendant are DISMISSED without prejudice. Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss (Dkt. # 67) is DENIED AS MOOT.

DATED: February 8, 2008

BY THE COURT:

*s/ Wiley Y. Daniel*
_____
Wiley Y. Daniel
United States District Judge